CENTRAL LIFE INSURANCE SOCIETY, Appellant, v. DENVER MUTUAL FIRE INSURANCE CO., Respondent.

(256 N. W. 126.)

(File No. 7632.   Opinion filed July 30, 1934.)

*Wallace E. Purdy,* of Brookings, for Appellant.
*E. F. Green,* of DeSmet, for Respondent.

CAMPBELL, J.  This is an appeal from an order sustaining a demurrer to plaintiff's second amended complaint in an action to recover upon a fire insurance policy, and the facts may be summarized as follows:  Defendant is a township mutual fire insurance company, organized under sections 9264-9280, Rev. Code 1919.  It charges a small policy fee (in this case $4.40) when the policy is written, and depends upon assessments to pay losses; insured being required to give an undertaking (section 9268, Rev Code 1919) binding himself for his pro rata payments.

In November, 1928, Daniel Rasmussen owned a farm in Kingsbury county (in the territory where defendant company operated) with buildings thereon, mortgaged for $5,800 to plaintiff, an Iowa life insurance company, which mortgage required Ras-

mussen to keep the structures on the farm insured against damage by fire for benefit of plaintiff. November 10, 1928, Rasmussen took out a policy of insurance in defendant company insuring the dwelling house against fire in the amount of $800. The policy provided in part as follows: "This entire policy, unless otherwise provided by agreement endorsed hereon and added hereto, shall be void * * * if any change other than by death of the insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured, or otherwise * * *" and also provided: "If, with the consent of this company, an interest under this policy exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, all the conditions of this policy shall apply to such interest unless otherwise expressed in writing on this policy or attached or appended thereto"—both of the above clauses being in accordance with the standard form of fire policy prescribed by section 9199, Rev. Code 1919. To this policy there was attached a mortgage clause in favor of plaintiff which was not precisely in accordance with either of the mortgage clauses set forth in section 9198, Rev. Code 1919, but which read as follows:

"Loss Clause for Fire Insurance Policy

"Loss or damage, if any, to the buildings insured under this policy is hereby made payable to Central Life Assurance Society (Mutual), of Des Moines, Iowa, Mortgagee, as its interest may appear at date of loss, subject to all the conditions of said policy; except that as to interest of the aforesaid mortgagee herein, this policy shall not be invalidated by the non-payment of any premium, premium note, assessment or dues against said policy, unless ten days prior written notice shall be given said mortgagee by this insurance company of such non-payment.

"It is hereby understood and agreed that where the word 'mortgagee' is used in this form, it shall be construed to mean mortgagee, trustee, beneficiary under deed of trust, or the assigns of same, as the case may be.

"Attached to and forming part of policy No. 5843 of the Denver Mutual Fire Insurance Co., of Hetland, South Dakota.

"Dated November 10, 1928.

"Charles H. Johnson, Secretary."

This policy with mortgage clause attached was delivered by Rasmussen to the plaintiff.

On March 11, 1931, the owner Daniel Rasmussen, conveyed the premises in question to one Anton Rasmussen. As soon as plaintiff learned of the change of ownership of the property (December 12, 1931), plaintiff sent the policy to the secretary of defendant company advising defendant company of the change of ownership and requesting defendant company to indorse on the policy its consent or agreement thereto.

At this point it may be noticed that the complaint does not state what defendant company thereupon did or said or wrote to plaintiff, if anything, concerning the situation, nor does it allege that defendant kept silent or that plaintiff was misled or deceived by defendant's silence. The only allegation of the complaint relating to defendant's conduct after plaintiff sent in the policy is as follows: "That since the said 12th day of December, 1931, the defendant has retained and still retains said Policy of Insurance, and the plaintiff has never received notice of the cancellation of said policy. That by reason of the fact that the defendant retained said Policy of Insurance and failed to give notice of the cancellation of the same, after it had received notice of the change of ownership of the property insured, the plaintiff believed that the defendant regarded the said Insurance Contract as being in force, and that due to that fact only, the plaintiff was misled to its prejudice, and the defendant thereby waived any right it might have had to cancel said policy."

Nearly a year later (November 8, 1932) the dwelling house was totally destroyed by fire. It was worth more than the insurance of $800, and the amount due on plaintiff's mortgage at that time was about $6,700. Daniel Rasmussen and Anton Rasmussen gave due notice of loss to the defendant company and served verified proof of loss in writing, but defendant company rejected the claim, and plaintiff instituted the present suit to recover thereon.

■ Plaintiff-appellant argues that, since the mortgage clause attached to the policy was not strictly in the form of either mortgage clause set forth in our statute, it should be held that it was

intended to be a mortgage clause with full contribution and that plaintiff is entitled to the benefit of the provision which our statute requires in a mortgage clause with full contribution to the effect that the insurance so far as concerns the interest of the mortgagee "shall not be invalidated by any act or neglect of the mortgagor or owner * * * nor by any change in the title or ownership of the property, * * *" and therefore that plaintiff's rights should not be affected by Rasmussen's conveyance of the property to Anton. We find no merit in this contention. The mortgage clause on the policy is substantially the short form or "open clause" prescribed by our statute plus a statement that all conditions of the policy should apply thereto with the exception that nonpayment of assessments shall not invalidate the policy without prior notice to the mortgagee. We think the addition of this provision to the open mortgage clause is entirely within the permission of the standard form policy (section 9199, Rev. Code 1919), which says that all conditions of the policy shall apply to the mortgage interest unless otherwise expressed in writing; it amounts merely to an expression in writing of one condition of the policy which shall not invalidate the same as against the mortgagee. The added words simply make the "open clause" a little more favorable to the insured than it otherwise would be.│ We see no harm in such addition, and do not believe that it translates this "open clause" into a mortgage clause with full contribution.

If it be held (and we think it must, as above indicated) that the interest of plaintiff-appellant under the above policy is affected in the same manner as the interest of the insured by the change of title, then plaintiff-appellant argues that in any event the change of title renders the policy voidable only as distinguished from void, and that the policy will continue in full force and effect notwithstanding such change of title unless defendant company, upon learning of the change of title, gives formal notice of the cancellation of the policy, citing and relying upon such cases as Anderson v. U. S. Fire Ins. Co. (1928) 57 N. D. 462, 222 N. W. 609. The North Dakota case is clearly distinguishable upon the facts from the instant case, and we do not believe it goes to the extent contended for by plaintiff-appellant. The policy, by its terms, provides that it "shall be void" in case of change of title. Whether change of title does in fact absolutely avoid the policy,

we need not undertake to decide in this case. It is the clear weight of authority that change of title, if it does not absolutely avoid the policy, at least suspends the policy during the period of the breach (see annotation, 52 A. L. R. 843), and in the instant case the loss occurred during the period of the breach. Now it may be conceded that the provision of the policy (whether it be deemed to work an absolute avoidance of the policy or a suspension thereof during the continuance of the breach) is for the benefit of the insurer, and may be waived by the insurer either by express words, or by conduct pursuant to the general principles of estoppel. That is substantially as far as the North Dakota case above mentioned goes. In the instant case there was no conduct on the part of the insurer after notice of breach which would amount to a waiver or work an estoppel. The insurer first learned of the breach when plaintiff-appellant sent in the policy advising of the change of ownership and requesting the insurer to indorse on the policy its consent to such change and return the policy. By so doing, plaintiff-appellant, informing the insurer of the breach, requested the insurer to waive the same and to evidence such waiver by indorsement and return of the policy. Assuming that the insurer, under those circumstances, retained the policy and maintained silence, there was nothing about such conduct to establish a waiver of the breach or to estop the insurer from claiming suspension by reason of the breach as against plaintiff-appellant. Indeed, the insurer, by such conduct, was, in substance, indicating its refusal to waive the breach and its unwillingness to waive and evidence waiver as plaintiff-appellant desired and had requested.

The order appealed from is affirmed.

All the Judges concur.